IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CAFFERTY CLOBES MERIWETHER & SPRENGEL, LLP, on behalf of itself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 16 C 2331 |
| XO COMMUNICATIONS SERVICES, INC., | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Cafferty Clobes Meriwether & Sprengel, LLP ("Cafferty Clobes") brought this lawsuit against XO Communications Services, Inc. under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), challenging the automatic renewal provisions of its Service Order Agreement ("Agreement"). XO Communications Services, LLC then moved to dismiss that Complaint under Fed. R. Civ. P. ("Rule") 12(b)(6) for an asserted failure to state a claim on which relief can be granted and under Rule 21 for a claimed misjoinder (Dkt. No. 14), the latter on the ground that the originally named defendant had converted from a conventional corporation to a limited liability company in 2011 (see X. Mem. 4).[1] That motion's arguments under Rule 12(b)(6) were not mooted when Cafferty Clobes then cured the misjoinder in its First Amended Complaint ("FAC"), and so this Court now turns to XO's substantive reasons for dismissal.

---

[1] Because there is no suggestion that the limited liability company is not responsible for any claims that Cafferty Clobes might have against its predecessor corporation, this opinion will not distinguish between the two, referring to them collectively as "XO." References to the parties' memoranda take the form "Mem. --" or "Reply --" as appropriate, prefixed with identifying abbreviations of "X." for XO and "C." for Cafferty Clobes.

## **Motion To Dismiss Standards**

Under Rule 12(b)(6) a party may move for dismissal for the "failure to state a claim upon which relief can be granted." Familiar Rule 12(b)(6) principles require the district court to accept as true all of Cafferty Clobes' well-pleaded factual allegations and to view them in the light most favorable to it as the non-moving party (Lavalais v. Vill. of Melrose Park, 734 F.3d 629, 632 (7th Cir. 2013)). But "legal conclusions or conclusory allegations that merely recite a claim's elements" are not entitled to any presumption of truth (Munson v. Gaetz, 673 F.3d 630, 632 (7th Cir. 2012)).

In the past decade the Supreme Court made an important change in the evaluation of Rule 12(b)(6) motions via what this Court regularly refers to as the "Twombly-Iqbal canon," a usage drawn from Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), as more finely tuned in Erickson v. Pardus, 551 U.S. 89 (2007) (per curiam), and Ashcroft v. Iqbal, 556 U.S. 662 (2009)). That canon has introduced the concept of "plausibility" into the analysis, and in that respect our Court of Appeals has "interpreted Twombly and Iqbal to require the plaintiff to provid[e] some specific facts to support the legal claims asserted in the complaint" (McCauley v. City of Chicago, 671 F.3d 611, 616 (7th Cir. 2011) (internal quotation marks omitted)). As McCauley went on to reconfirm, claimants "must give enough details about the subject-matter of the case to present a story that holds together" (id.).

Because the focus of Rule 12(b)(6) motions is on the pleadings, they "can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice" (Geinosky v. City of Chicago, 675 F.3d 743, 745 n.1 (7th Cir. 2012)). But a nonmovant has more flexibility, for it "may elaborate on [its] factual allegations so long as the new elaborations are consistent with the pleadings" (id.).

In granting a dismissal, courts should usually give a claimant at least one opportunity to amend (Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind., 786 F.3d 510, 519 (7th Cir. 2015)).  And consistently with the principles of Rule 15(a)(2), courts generally grant leave to amend freely.  But where "it is certain . . . that any amendment would be futile or otherwise unwarranted," the court can deny leave to amend (id. at 519-20, emphasis in original).

**Background**

XO agreed to provide local and long distance telephone service to the Cafferty Clobes law firm for an initial term of three years beginning on July 7, 2005 (FAC ¶¶ 11, 13).  Agreement ¶ B (the "Renewal Clause") (1) provided that service would automatically continue for successive three-year terms unless cancelled, (2) promised that XO would give written notice of impending renewal ("Renewal Notice") before the contract term expired and (3) required that any requests to terminate service be in writing and received at least 30 days before the requested effective termination date.  It concluded with a reminder that early termination could result in applicable Termination Charges (id.).  Those Termination Charges were specified in Agreement ¶ J (the "Termination Clause"), which tied them to the amount that Cafferty Clobes could be expected to pay over the remainder of the cancelled term.  Agreement ¶ M further said that the substantive law of the Commonwealth of Virginia was to govern.

Pursuant to the Renewal Clause, the Agreement was extended for additional terms on July 7 of each of 2008, 2011 and 2014 (FAC ¶ 14).  But the only information that Cafferty Clobes received from XO about those renewals was a standard reminder accompanying each monthly bill ("Invoice Language") (FAC ¶¶ 14-15).  That reminder, a copy of which is attached as Ex. 1 to this opinion, instructed Cafferty Clobes to call XO at least 45 days before the Agreement expired if it did not wish to renew for another term (FAC ¶ 15).  Neither the invoice

nor that reminder specified the date on which Cafferty Clobes' three-year term was to roll over (id.).

In the summer of 2015 Cafferty Clobes moved its office to a location that XO was unable to service and so cancelled the Agreement, paying a $1000 termination charge (FAC ¶ 17). XO then demanded a further $9000 in liquidated damages for Cafferty Clobes' early termination (FAC ¶ 18). When Cafferty Clobes refused to pay, XO hired debt collectors to pursue it (FAC ¶ 19).

Rather than defend against XO's collection efforts, Cafferty Clobes brought this class action. In four counts it alleges (1) contract-based theories of recovery, (2) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. (the "Consumer Fraud Act"), (3) violation of the Illinois Automatic Contract Renewal Act, 815 ILCS 601/1 et seq. (the "Automatic Renewal Act") and (4) unjust enrichment as an alternative to Count I.

## **Contractual Theories of Recovery**

Both parties agree that Virginia law governs the Agreement (X. Mem. 4-5; C. Mem. 3 n.3). As recently reconfirmed in Ramos v. Wells Fargo Bank, NA, 770 S.E.2d 491, 493 (Va. 2015), in Virginia the elements of a breach of contract action are (1) a legally enforceable obligation, (2) the violation or breach of that obligation and (3) injury or damage caused by that breach. Moreover, "when parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights" (Ward's Equip., Inc. v. New Holland N. Am., Inc., 493 S.E.2d 516, 520 (Va. 1997)). Nor does the enforcement of those contractual rights, even when arguably arbitrary, violate such an implied covenant (Charles E. Brauer Co. v. NationsBank of Va., N.A., 466 S.E.2d 382, 386 (Va. 1996)).

Cafferty Clobes alleges that XO breached the Agreement by (1) failing to provide adequate notice of impending renewal (FAC ¶ 36), (2) failing to disclose the Renewal Clause clearly and conspicuously (FAC ¶ 37), (3) misrepresenting the Renewal Clause in the Invoice Language (FAC ¶ 38), (4) charging an excessive termination fee designed to act as a penalty (FAC ¶ 39) and (5) violating the implied covenant of good faith and fair dealing (FAC ¶ 40). But for the most part, the wrongdoings that Cafferty Clobes asserts are unrelated to XO's actual obligations under the Agreement -- they are at most potential defenses to a breach of contract action, not grounds for recovery -- and Cafferty Clobes cannot cure that defect by the simple expedient of retitling its grievances as somehow violative of good faith and fair dealing.

As a threshold matter, though, Cafferty Clobes fails even to describe the injury (if any) that it suffered as a result of XO's alleged failure to provide an adequate Renewal Notice (the sole breach of an actual obligation advanced by Cafferty Clobes) and the Invoice Language's assertedly inaccurate description of Cafferty Clobes' rights under the Renewal Clause. Cafferty Clobes does not say that it took, failed to take or abstained from taking any action because it did not receive an adequate Renewal Notice or because the Invoice Language misstated how to cancel service, let alone how those hypothetical acts or omissions harmed it. On the contrary, it moved to a new location a year after the Agreement had most recently renewed. On its telling, its decision to cancel service -- and therefore any fees that resulted from that cancellation -- was unrelated to where it was (or thought it was) in the automatic renewal cycle, and the manner in which it informed XO of that decision presented no difficulty. That leaves this Court to speculate as to how Cafferty Clobes' injuries stem from any alleged breach.

On that score Cafferty Clobes has totally ignored the lack of diligence that it must ascribe <u>to itself</u> in order to lay the blame at XO's doorstep for the manner in which the Agreement was

renewed for no fewer than three additional three-year terms. It is hard to explain why a business entering into a long-term contract with an automatic renewal provision would fail to set a reminder for itself. And the characterization in FAC ¶ 15 of the Invoice Language as "boilerplate" really distorts how conspicuous that notice is, so much so that this Court has attached Ex. 1 to this opinion: Note that what accompanied every invoice was a two-page document in large easy-to-read type, with a larger "Contract Renewal Information" heading for a separate section constituting more than half of the written message included with the bill (and with that information set out in type a good deal larger than the itemized information that forms the bulk of the bill itself). In that message XO reminds its customers about the prospective automatic renewal of the contract. Although no holding as to the effect of such inattention on the part of Cafferty Clobes is necessary for the ruling in this opinion, it does appear that Cafferty Clobes is sticking its head in the sand about what it should reasonably have known about the subject dealt with here.

As for Cafferty Clobes' further asserted grounds for claiming a breach of contract, they suffer from defects more severe than a bare paucity of detail. Its allegation that XO breached the Agreement because the Renewal Clause was not clear and conspicuous can be dismissed with the observation that XO had no such contractual duty. There is also no contractual obligation that XO could have breached by its actions as to the Termination Charges. Referring a matter to a debt collector to seek payment of an obligation may be many things, but it is not a breach of contract simply because the debtor insists it has a defense against payment. So too with accepting $1000 that Cafferty Clobes paid as a termination charge but is now challenging. It surely cannot be a violation of the implied covenant of good faith and fair dealing for XO to insist on payment according to the terms of the Agreement, even if a court might ultimately

refuse to enforce those terms. So on those subjects no breach of contract claim could be sustained.

**Statutory Theories of Recovery**

Violations of the Automatic Renewal Act are actionable under the Consumer Fraud Act (815 ILCS 505/2Z; 815 ILCS 601/15), but only one provision of the Automatic Renewal Act has any bearing on this case (815 ILCS 601/20(c)):

> This Act does not apply to business-to-business contracts.

Cafferty Clobes attempts to escape the clear implication of that provision -- both it and XO are undoubtedly businesses -- by pointing out that the Automatic Renewal Act states its protections in terms of the "consumer" and a business can be a consumer under the Consumer Fraud Act (C. Mem. 8-11). But that is nonsense, for a rule that consumers are protected unless they are businesses cannot honestly be presented as protecting businesses because they are consumers.[2]

With no violation of the Automatic Renewal Act available as a path to recovery, Cafferty Clobes must seek to rely on the Consumer Fraud Act's general prohibition against "unfair or deceptive acts or practices . . . in the conduct of any trade or commerce" (815 ILCS 505/2). That

---

[2] XO rather emphatically makes the further argument that the Automatic Renewal Act provides no private right of action because claims under it must be pursued under the Consumer Fraud Act (X. Mem. 8; X. Reply 7-9). But it acknowledges the availability of a private right of action under the Consumer Fraud Act, so that argument is a mere quibble about Cafferty Clobes' presentation of its claim for relief in two counts rather than one. But why stop there if such quibbles matter? After all, under Rule 10(b) -- the only place in the Rules where the term "count" is given content -- counts in the federal system serve to distinguish claims for relief founded on separate transactions or occurrences, not to distinguish among "causes of action." Cafferty Clobes' adherence to the state court practice of pleading causes of action in separate counts is not grounds for dismissal, however, and so certainly any formal errors in doing so cannot not justify dismissal either. For excellent discussions of the distinction between the federal law concept of a "claim for relief" and the state common law or code pleading concept of a "cause of action," with the latter having to include a theory of recovery as the former does not, see NAACP v. Am. Family Mut. Ins. Co., 978 F.2d 287, 291-93 (7th Cir.1992) and Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1077-78 (7th Cir.1992).

prohibition reaches unfair acts even if they are not deceptive (Batson v. Live Nation Entm't, Inc., 746 F.3d 827, 830 (7th Cir. 2014)).

In determining whether conduct is "unfair" for purposes of the Consumer Fraud Act, courts look to the "Sperry factors," named for FTC v. Sperry & Hutchinson Co., 405 U.S. 233 (1972). As Batson, 746 F.3d at 830 (citations omitted and quoting Illinois caselaw) has explained:

> The Sperry factors ask whether the practice (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. The Illinois Supreme Court has confirmed that "all three of the criteria in Sperry do not need to be satisfied to support a finding of unfairness." Instead . . . the Illinois high court has held that "[a] practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three."

As to the second Sperry factor, the relevant inquiry "is whether a defendant's conduct is so oppressive as to leave the consumer with little alternative except to submit to it" (Batson, id. at 833 (internal quotation marks omitted)).

Crucially Avery v. State Farm Mut. Auto Ins. Co., 216 Ill. 2d 100, 169, 835 N.E.2d 801, 844 (2005) (internal quotation marks and citations omitted) limits the sort of deceptive practices that may be punished under the Consumer Fraud Act:

> A breach of contractual promise, without more, is not actionable under the Consumer Fraud Act. . . . [I]t is settled that the Consumer Fraud Act was not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy. We believe that a "deceptive act or practice" involves more than the mere fact that a defendant promised something and then failed to do it. That type of "misrepresentation" occurs every time a defendant breaches a contract.

When consumer fraud is alleged in a contractual setting, the plaintiff must instead point to "deceptive actions or practices distinct from any underlying breach of contract," which means that the consumer fraud and contract claims cannot "rest on the same factual foundation" (Greenberger v. GEICO Gen. Ins. Co., 631 F.3d 392, 399 (7th Cir. 2011)). Even a "'widespread'

or 'systemic' breach of contract does not suffice to state a claim for consumer fraud under the statute," notwithstanding a plaintiff's assertion that the breach implicates consumer-protection concerns (id. at 400).

Cafferty Clobes points to three allegedly problematic business practices: (1) XO did not disclose the terms of the Renewal Clause clearly and conspicuously, (2) it did not notify customers in writing of the impending automatic renewal and (3) it charged an excessive termination fee designed to act as a penalty (FAC ¶ 48). Tellingly, the language of the first two seems lifted from the requirements of the Automatic Renewal Act (see 815 ILCS 601/10(a) and (b)), which has already been shown in this opinion not to apply to the Agreement.

Indeed, because the Illinois General Assembly amended the Automatic Renewal Act to exclude businesses from its protection six months before the parties signed the Agreement (see 815 ILCS 601/20(c)), Cafferty Clobes' assertion that those two business practices offend public policy is patently groundless. Nor is fine print in business contracts somehow oppressive or unscrupulous, so at least the first two Sperry factors are wholly lacking. Moreover, the fact that the first two business practices are identical with Cafferty Clobes' contract claim means they cannot be cast as deceptive practices for purposes of the Consumer Fraud Act either.

As to the Termination Charges, the $1000 already paid cannot be recovered as a matter of law, while the $9000 that XO says it is still owed does not appear to raise any consumer protection issues. As for the former, Spivey v. Adaptive Mktg. LLC, 622 F.3d 816, 822 (7th Cir. 2010) recently reiterated that Illinois' voluntary payment rule bars the recovery of any monies paid under a claim of right absent fraud, coercion or mistake of fact -- not a mistake of law. And as to the as-yet-unpaid $9000, it is possible that a threat to enforce an unconscionable penalty clause against numerous consumers who could not reasonably avoid entering into contracts with

that clause and who cannot afford to defend against enforcement might in principle support a claim under the Consumer Fraud Act. But there is not even a hint, nor is there any basis for inferring, that Cafferty Clobes in particular lacked any meaningful choice but to sign a multi-year commitment with a steep early termination charge in order to obtain any sort of functioning telephone service at all. All that Cafferty Clobes has really pleaded is buyer's remorse, which does not cut it.

### Unjust Enrichment

Finally, XO argues that Illinois law provides the rules of decision applicable to FAC Count IV, and Cafferty Clobes does not contest that conclusion (X. Mem. 12; C. Mem. 14-15). This opinion therefore looks to <u>People ex rel. Hartigan v. E&E Hauling, Inc.</u>, 153 Ill. 2d 473, 497, 607 N.E.2d 165, 177 (1992) (citation and quotation marks omitted), which teaches:

> The theory of unjust enrichment is based on a contract implied in law. To recover under this theory, plaintiffs must show that defendant voluntarily accepted a benefit which would be inequitable for him to retain without payment. Because unjust enrichment is based on an implied contract, where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application.

And "[i]n determining whether a claim falls outside a contract, the subject matter of the contract governs, not whether the contract contains terms or provisions related to the claim" (<u>Utility Audit, Inc. v. Horace Mann Serv. Corp.</u>, 383 F.3d 683, 689 (7th Cir. 2004)).

Those doctrines leave Cafferty Clobes with no predicate for asserting unjust enrichment. To the extent that it attempts to do so based on claimed violations of the Automatic Renewal Act and Consumer Fraud Act (C. Mem. 14-15), that portion of Count IV falls alongside Counts II and III. Furthermore, while FAC ¶ 67 alleges that Cafferty Clobes paid XO by purchasing services, it actually did receive those services in accordance with the Agreement, so neither was their contract merely implied nor is it inequitable for XO to retain those payments.

More fundamentally, Cafferty Clobes cannot place its dispute with XO under the rubric of quasi-contract by venturing that the Agreement might not be a binding contract (see C. Mem. 14). It gives no reason to assert the Agreement is not binding altogether, and attacking the Termination Clause in particular will not suffice. Damages for breach would be still a contractual matter even if no valid term prescribed a formula for ascertaining those damages, so there can be no unjust enrichment claim as to any aspect of the Agreement.

Further undermining Count IV, Cafferty Clobes voluntarily paid $1000 on a claim of right where XO's only leverage against it comprised the remedies available to any creditor in pursuit of a deadbeat. And Cafferty Clobes' assertion that XO was enriched to the tune of $9000 -- justly or unjustly, it does not matter -- because it might sue to recover that amount in damages for Cafferty Clobes' breach of contract is simply silly.

## **Conclusion**

XO's motion to dismiss the FAC (Dkt. No. 14) is granted. More specifically:

1. Count I's contentions that XO breached the Agreement (a) because the Automatic Renewal Clause was not clear and conspicuous or (b) by collecting a $1000 termination charge or (c) by seeking to collect a further $9000 in early termination charges are dismissed without leave to amend.

2. Count II is likewise dismissed without leave to amend as to XO's alleged failures (a) to disclose the Automatic Renewal Clause clearly and conspicuously and (b) to notify customers in writing before that automatic renewal.

3. Counts III and IV are dismissed in their entirety, also without leave to amend.

This action, however, is not dismissed in its entirety. If Cafferty Clobes believes that either or both of Counts I and II is or are salvageable on grounds other than those rejected by this opinion, it must file a proposed Second Amended Complaint on or before June 23, 2016 (with a Judge's Copy being contemporaneously delivered to this Court's chambers -- see LR 5.2(f)), failing which this action will be dismissed with prejudice on June 24.

So much, then, for the ordering aspect of this opinion. But this Court would view itself as remiss if it did not add something about this action's suitability or unsuitability for class treatment -- and relatedly, about the possibility that this Court's subject matter jurisdiction might come into question. Cafferty Clobes' FAC raises concerns as to the propriety of treating it as representative of a class in its dispute with XO -- remember that the existence of such a class is a necessary precondition (1) to aggregating the putative class members' claims to determine that the claimed amount in controversy exceeds $5 million and (2) to treating XO like a conventional corporation when pleading its citizenship (contrast 28 U.S.C. § 1332(d)(6) and (10) with the standards imposed by caselaw as to limited liability companies under the ordinary diversity requirements of 28 U.S.C. § 1332(a)). But for the present there is nothing facially deficient about Cafferty Clobes' allegation of jurisdiction, and this opinion expresses no judgment on the question of class certification.

_____
Milton I. Shadur
Senior United States District Judge

Date: June 3, 2016



| | |
|---|---|
| Invoice Date | 05/27/14 |
| Account Number | 000001000000554 |
| Invoice Number | 0267705038 |
| Payment Due Date | 06/26/14 |
| Total Amount Due | $0.00 |
| Customer Care | 888.575.6398 |
| Pay Online | www.bc.xo.com |

## Service Quality Requirements

Local Exchange Service Quality Requirements: The law obligates all telecommunications carriers to provide installation and repair in a timely manner. Credits or other remedies may be available for delays in repair, installation or missed appointments.

## Manage Your Account Online and On the Go

Are you taking full advantage of the **XO Business Center**? Business Center (*bc.xo.com*) is a powerful self-service online portal that lets you manage your XO account whenever, wherever. You can view and pay your bills online, initiate trouble tickets and view their status, sign up for network outage and maintenance alerts - and more, all without having to call XO Customer Care.

**Mobile Business Center** (*mbc.xo.com*) lets you quickly create repair tickets, view ticket status, and make ticket updates (e.g., add notes, change access hours, or request closure) from most web-enabled mobile devices. You have to be an existing XO Business Center user to use the Mobile Business Center.

If you do not have a Business Center account, register today at *bc.xo.com*! Registration is easy and free.

## Payment Notice

You are responsible for the payment of all charges on your bill. Failure to pay any portion may result in collection action. In addition to collection action, non-payment of certain charges may result in the disconnection of your local service. Charges for which failure to pay cannot result in the disconnection of local service include informational services and pay-per-call services.

## Contract Renewal Information

**For XO Business Services Customers (Not Applicable to Carrier Services Customers)**

Your contract with XO will automatically renew at the end of your current service term for an identical term at the rates and charges set forth therein. (This does not apply to customers whose services are provided pursuant to a contract or applicable tariff that specifies otherwise). If you prefer not to have your contract automatically renew, you must place a request to disconnect your XO services by contacting either your XO Client Services Manager or XO Customer Care at the toll-free number shown on this invoice at least **45 days** prior to the expiration date of your agreement.

If you are a customer utilizing tariff services in Minnesota, New Jersey, Pennsylvania, or Washington, or a customer utilizing either tariff or non-tariff services in California, and you prefer not to have your contract automatically renew, you must place a request to disconnect your XO services by contacting either your



| Invoice Date | 05/27/14 |
|---|---|
| Account Number | 000001000000554 |
| Invoice Number | 0267705038 |
| Payment Due Date | 06/26/14 |
| Total Amount Due | $0.00 |
| Customer Care | 888.575.6398 |
| Pay Online | www.bc.xo.com |

## Contract Renewal Information  Continued

XO Client Services Manager or XO Customer Care at the toll-free number shown on this invoice at least **30 days** prior to the expiration date of your agreement.

Please note that this is a courtesy reminder and does not change the service term specified in your contract with XO. If you take no action, your service contract will automatically renew. We value your business and hope you choose to remain our customer. Please contact XO Customer Care if you have any questions about when your contract term is due to expire.

Thank you for being a customer of XO Communications- we look forward to serving you now and in the future!

**For XO Carrier Services Customers**

Your contract with XO will automatically renew at the end of your current service term for an identical term at the rates and charges set forth therein. (This does not apply to customers whose services are provided pursuant to a contract or applicable tariff that specifies otherwise). If you prefer not to have your contract automatically renew, you must submit a request to discontinue your XO services at least **30 days** prior to the expiration date of your agreement by completing the online Carrier Customer Disconnect Form located at www.xo.com/care/carriers/disconnect/index.html.

Please note that this is a courtesy reminder and does not change the service term specified in your contract with XO. If you take no action, your service contract will automatically renew. We value your business and hope you choose to remain our customer.

Thank you for being a customer of XO Communications- we look forward to serving you now and in the future!

**Name:** XO Communications Services, LLC
**Bank:** Bank of America
**ABA (ACH):** 111000025
**ABA (WIRE):** 026009593
**Credit:** XO Communications Services, LLC
13865 Sunrise Valley Drive
Herndon, VA 20171
**Account:** 4770508572
**Your Account #:** Please provide
**International Wire SWIFT Code:** BOFAUS3N

## Electronic Fund Transfer Available

XO is pleased to offer payment of your invoices via electronic funds transfer (EFT).

EFT is a hassle free option that can ensure timely posting of payments to your XO account to help avoid late fees.

Payments made by EFT and received before 2:00 p.m. Eastern time, will be applied to your account on that same business day.

The wiring instructions are below.